IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MECA C. MOLINA,

             Plaintiff,

vs.                                    Case No. 15-2325-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

             Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

2

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On May 9, 2013, administrative law judge (ALJ) Evelyn M. Gunn issued her decision (R. at 22-29). Plaintiff alleges that she had been disabled since November 9, 2009 (R. at 22). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2014 (R. at

4

24).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since the alleged onset date (R.
at 24).  At step two, the ALJ found that plaintiff had a severe
combination of impairments (R. at 24).  At step three, the ALJ
determined that plaintiff's impairments do not meet or equal a
listed impairment (R. at 25).  After determining plaintiff's RFC
(R. at 25), the ALJ found at step four that plaintiff could
perform past relevant work as a policyholder clerk, receptionist
and radio dispatcher (R. at 28-29).  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 29).

**III.  Did the ALJ err by failing to fully consider the opinions
of Dr. Koprivica and by failing to even mention the opinions of
Michael Dreiling, a vocational consultant?**

On June 29, 2010, Dr. Koprivica performed a detailed
medical evaluation on the plaintiff (R. at 411-434).  He limited
plaintiff to only occasional squatting, crawling, kneeling or
climbing.  She should avoid overhead lifting of a frequent or
constant nature.  She should avoid repetitive or sustained
activities above shoulder girdle level bilaterally.  She is
limited to lifting or carrying less than 10 pounds, and should
not frequently or constantly lift or carry about shoulder level.
She should avoid repetitive pushing or pulling at chest level,
and should avoid frequent or constant bending, pushing, pulling
or twisting.  She should avoid sustained or awkward postures of

5

the lumbar spine.  For below chest level activities, he recommended a maximum of 20 pounds for lifting and carrying on an occasional basis (R. at 432-433).  The ALJ noted some of the above restrictions in her decision (R. at 27).  In making her RFC findings, the ALJ cited to the evaluation by Dr. Koprivica to support her finding that plaintiff could work at the sedentary level (R. at 28).

However, not mentioned by the ALJ was this statement in the evaluation by Dr. Koprivica:

> When one considers the impact of combining all of these disabling conditions, I would consider Ms. Molina to be potentially employable from a physical capability standpoint.  There is a question as to if she would realistically be employable with these multiple disability conditions and whether or not realistically an ordinary employer would employ her.
>
> In looking at these issues, I would recommend a formal vocational evaluation.

(R. at 433).

Shortly after Dr. Koprivica recommended that a formal vocational evaluation be performed on plaintiff, a vocational assessment was performed on plaintiff by Michael Dreiling on October 13, 2010 (R. at 542-553).  He concluded as follows:

> From a vocational perspective, it is apparent that this individual has the skills and knowledge to attempt to work in the labor market; however, **it is very uncertain as to whether or not she will be able to sustain and maintain full-time employment in**

**the labor market, even at a sedentary office-type job, given the various medical problems and disabilities that she has and the impact that they have on her capacity to function on a full-time basis in the labor market.**

**From a vocational perspective, it is my opinion that this individual may be able to obtain employment utilizing her past skills,** [but] **may have considerable difficulty with maintaining employment on a full-time basis and eventually, will get to the point where it will not be reasonable to expect that employers will be in a position to hire this individual to perform work, even of a sedentary office-type setting, given the ongoing problems that she has dealt with and more than likely will continue to deal with as she attempts to work.**

She does have significant medical issues and disabilities and restrictions that are quite limiting, although she does have past work experience and skills that are marketable in the labor market, and the primary issue in question will be whether or not she can maintain even sedentary full-time employment in the labor market with the various medical injuries and disabilities that she has.

It is anticipated that she will be able to obtain employment; however, the main question will be whether or not she can maintain and sustain competitive employment in the open labor market…

Finally, if she is not successful in maintaining and sustaining competitive employment in the open labor market, it would be my opinion from a vocational perspective that her difficulties and inability to get future employers to hire her for a job setting would be based upon a combination of her medical disabilities and as noted by Dr. Koprivica would not be due

> to one particular disability or injury in
> isolation.

(R. at 552-553, emphasis added).  The ALJ never mentioned this

evaluation in her decision.

Thus, Dr. Koprivica stated that although he considered

plaintiff to be potentially employable from a physical

capability standpoint, he questioned whether she would

realistically be employable with these multiple disabling

conditions and whether or not realistically an ordinary employer

would employ her.  He recommended that a formal vocational

evaluation be performed, which was done by Mr. Dreiling.  Mr.

Dreiling opined that "it is very uncertain" whether she can

sustain and maintain full-time employment given her various

medical problems and disabilities, and their impact on her

capacity to function on a full-time basis.  He further opined

that although she may be able to obtain employment, she may have

"considerable difficulty" with maintaining employment on a full-

time basis and eventually will get to the point where it will

not be reasonable to expect that an employer will hire the

plaintiff.

It is improper for the ALJ to pick and choose among medical

reports, using portions of evidence favorable to his position,

while ignoring other evidence.  Keyes-Zachary v. Astrue, 695

F.3d 1156, 1166 (10th Cir. 2012); Hardman v. Barnhart, 362 F.3d

676, 681 (10th Cir. 2004).  An ALJ cannot simply cherry-pick
facts that support a finding of non-disability while ignoring
evidence that points to a disability finding.  <u>Denton v. Astrue</u>,
596 F.3d 419, 425 (7th Cir. 2010).  The concern in this case is
not only that Dr. Koprivica raised a question regarding
plaintiff's employability, but that Dr. Koprivica recommended a
formal vocational evaluation; the ALJ then completely ignored a
vocational evaluation in which the vocational consultant opined
that it is very uncertain whether plaintiff can maintain full-
time employment, and that plaintiff may have considerable
difficulty with maintaining employment.  According to SSR 06-
03p, opinions from non-medical sources should be evaluated, and
the case record should reflect the consideration of opinions
from non-medical sources who have seen the claimant in their
professional capacity when such opinions may have an effect on
the outcome of the case.  SSR 06-03p, 2006 WL 2329939 at *5, 6.
In addition to discussing the evidence supporting her decision,
the ALJ must discuss uncontroverted evidence she chooses not to
rely on, as well as significantly probative evidence which she
rejects.  <u>Beard v. Colvin</u>, Case No. 15-1105 (10th Cir. March 2,
2016; slip op. at 4); <u>Mays v. Colvin</u>, 739 F.3d 569, 576 (10th
Cir. 2014); <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-1010 (10th Cir.
1996).  The opinions in question are clearly significantly
probative evidence which should have been addressed by the ALJ.

9

In her brief, defendant relies on the case of <u>Keyes-Zachary</u>
<u>v. Astrue</u>, 695 F.3d 1156 (10th Cir. 2012) in support of the ALJ's
failure to mention the report of the vocational consultant (Doc.
18 at 10-11).   In that case however, the ALJ did discuss the
report by a therapist in two paragraphs, but did not indicate
what weight was accorded to the therapist's report.   695 F.3d at
1163.   The court noted that most of the report simply was a
narrative summary of statements by the claimant, and did not
express any opinions.   The court stated that a few statements in
the report might be considered opinions in the broad sense
described in SSR 06-03p, and some observations.   However, the
court indicated that none of these observations offered an
assessment of the effect of claimant's mental limitations on her
ability to work.   Thus, the court concluded that the failure to
assign a specific weight to the observations did not represent
harmful error.   695 F.3d at 1164.

By contrast, in the case before the court, the ALJ
completely ignored the report by the vocational consultant in
the ALJ decision.   The report clearly expresses the opinion by
the vocational consultant that it is very uncertain whether she
will be able to maintain full-time employment and that she may
have considerable difficulty with maintaining employment because
of her medical problems and disabilities and the impact that
they will have on her capacity to work on a full-time basis.   It

was not harmless error to ignore the question raised by Dr.
Koprivica and the opinions contained in the report of the
vocational consultant.

On the facts of this case, the court finds that the ALJ
erred by failing to mention the question raised by Dr. Koprivica
and the opinions expressed by the vocational consultant.  The
ALJ had a duty to consider these reports, and to indicate what
weight the ALJ accorded to these opinions.

## IV.  Did the Appeals Council err by failing to consider the opinions of Dr. Manion?

The ALJ issued her decision on May 9, 2013; plaintiff
alleged disability beginning November 9, 2009.  The Appeals
Council was provided with a letter from Dr. Manion, dated August
5, 2013.  Dr. Manion stated, in relevant part:

> This letter is on the behalf of a patient I
> have seen, Meca C. Molina…with an extensive
> history of neck and radiating arm pain with
> persistent numbness, tingling, and perceived
> weakness despite undergoing two cervical
> decompressions with fusion.  She also
> suffers from significant low back and
> radiating leg pain.  This combination of
> pain syndromes has prevented her from
> maintaining employment despite repeated
> efforts at working…
>
> Ms. Molina's work efforts seem laudable
> given the reported pain issues, demonstrated
> pathology on imaging, and repeated surgical
> interventions.  She does appear to be a
> candid individual with valid pain
> complaints.  Unfortunately, she suffers
> significant pain, requiring sporadic times

> necessitating her to lay down, which is
> obviously hindering her ability to achieve
> long-term employment.  It does appear that
> there are consistent and objective measures
> suggesting a true chronic pain condition…

(R. at 8).  The Appeals Council stated that this new information was about a later time, and therefore does not affect the decision about whether plaintiff was disabled beginning on or before May 9, 2013 (R. at 2).

The basic principle, derived from the relevant regulations, is well-established: the Appeals Council must consider additional evidence offered on administrative review-after which it becomes part of the court's record on judicial review-if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision.  Krauser v. Astrue, 638 F.3d 1324, 1328 (10th Cir. 2011).  Where the Appeals Council rejects new evidence as non-qualifying, and the claimant challenges that ruling on judicial review, it is a question of law subject to the court's de novo review.  Id.

The letter from Dr. Manion is new and material regarding plaintiff's impairments and limitations.  The question before the court is whether it is related to the period on or before the date of the ALJ's decision.  The ALJ decision is dated May 9, 2013, and the letter from Dr. Manion is dated August 5, 2013. The letter from Dr. Manion does not mention any time period. The medical records indicate that Dr. Manion saw the plaintiff

on April 5, 2013 and on April 26, 2013, prior to the date of the
ALJ decision on May 9, 2013 (R. at 1376-1379).

    In the case of Baca v. Department of Health and Human
Services, 5 F.3d 476, 479 (10th Cir. 1993), the court held that
evidence bearing upon an applicant's condition subsequent to the
date upon which the earning requirement was last met is
pertinent evidence in that it may disclose the severity and
continuity of impairments existing before the earning
requirement date or may identify additional impairments which
could reasonably be presumed to have been present and to have
imposed limitations as of the earning requirement date.  This
principle equally applies to whether evidence presented to the
Appeals Council is related to the period on or before the date
of the ALJ's decision.

    As noted above, Dr. Manion was treating plaintiff before
the date of the ALJ decision.  Furthermore, the opinions of Dr.
Manion are consistent with the question raised by Dr. Koprivica
and the opinions expressed by the vocational consultant, both of
which were ignored by the ALJ in her decision.  On the facts of
this case, the court cannot say that the failure to consider
this additional opinion evidence from a treatment provider is
harmless error.[1]  In fact, the new evidence from Dr. Manion

---

[1] Courts should apply the harmless error analysis cautiously in the administrative review setting.  Fischer-Ross v.
Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).  However, it may be appropriate to supply a missing dispositive
finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ

provides a clear basis for changing the ALJ's decision, <u>Hardman v. Barnhart</u>, 362 F.3d 676, 681 (10th Cir. 2004), especially when considered in conjunction with the opinions of Dr. Koprivica and the vocational consultant.

## V.  Other issues raised by the plaintiff

Plaintiff has also asserted error by the ALJ when evaluating plaintiff's credibility and in her step three and step four analysis.  The court will not address these issues because they may be affected by the ALJ's resolution of the case on remand after considering all of the opinions expressed by Koprivica, the opinions expressed by the vocational consultant Michael Dreiling, and the opinions of Dr. Manion.  <u>See Robinson v. Barnhart</u>, 366 F.3d 1078, 1085 (10th Cir. 2004).

Plaintiff, in her initial brief, argued that the ALJ erred by failing to discuss the evidence and explain why he found that plaintiff's impairments did not meet or equal listed impairments 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine) (Doc. 15 at 29-30).  However, in her reply brief, plaintiff stated that she was not asserting that her impairments met or equaled 1.02, but that they did meet or equal listed impairment 1.04 (Doc. 21 at 1-4).  The plaintiff then relied on the statement from Dr. Manion in support of her assertion that

---

did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way.  <u>Fischer-Ross</u>, 431 F.3d at 733-734; <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004).

her impairments meet or equal listed impairment 1.04 (Doc. 21 at 4).  Because neither the ALJ nor the Appeals Council considered this evidence, on remand, the ALJ shall consider all the evidence, including the statement from Dr. Manion, and make a finding as to whether plaintiff's impairments meet or equal listed impairment 1.04.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 10th day of March 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge